## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| ANGELO BROCK, individually and on behalf of all others similarly situated, | Civil Case No. |
| Plaintiff, | |
| vs. | |
| FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKERIES, LLC, a Georgia limited liability company; and FLOWERS BAKING CO. OF DENVER, LLC, a Colorado limited liability company, | |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT
## JURY TRIAL DEMANDED

Plaintiff Angelo Brock ("Plaintiff" or "Brock") files this Class and Collective Action Complaint against Defendants, Flowers Foods, Inc., Flowers Bakeries, LLC, and Flowers Baking Co. of Denver, LLC (collectively, "Defendants" or "Flowers"), seeking all available relief under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and Colorado wage per hour laws (the Colorado Wage Claim Act, § 8-4-101, et seq. ("Wage Claim Act") and the Colorado Minimum Wage Act, § 8-6-101, *et seq.* as implemented by the Colorado Minimum Wage Order and/or Colorado Overtime and Minimum Pay Standards Order, 7 Colo. Code Regs. § 1103-1, et seq. ("Minimum Wage Act") (collectively, the Colorado statutes and regulations are referred to as the "Colorado Wage and Hour Laws")), on behalf of himself and all current and former Distributors who work (or worked) for Defendants during the relevant time period. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## NATURE OF THE ACTION

1.      Flowers deploys an elaborate independent contractor misclassification scheme to
cheat its employees, its competition, and the state and federal governments.  Flowers does so by
willfully and systematically misclassifying its hundreds of delivery drivers as "Independent
Contractors" (sometimes referred to as "Delivery Employees" or "Distributors" throughout). In
doing so, Flowers denies these Delivery Employees, including the named Plaintiff, access to
critical benefits and protections they are entitled to by law, such as minimum wage, overtime
compensation, and indemnification for business expenses/deductions. , Through its willful
misclassification, Flowers also robs the federal and state governments of tax revenues and
generates losses to state unemployment insurance and workers' compensation funds and gets an
undue advantage over its law-abiding competition.[1]

2.      Flowers sells billions of dollars of baked goods to retailers throughout the United
States.  To help sustain its profits, Flowers has concocted a model where it advertises
"independent contractor" distributor opportunities.  As part of the model, Flowers makes Delivery
Employees purchase a specific sales territory in which the Delivery Employee is supposedly
going to purchase, take title to, re-sell, and distribute Flowers' bakery products to the Delivery
Employees' prearranged (by Flowers) customers. The Delivery Employees often pay in excess of
$100,000 for the right to the "independent business opportunity" outlined in Flowers'
advertisements and its uniform Franchise Disclosure Document and Distributor Agreement
("DA").

3.      In short, Flowers sells the notion that these "independent contractors" will run and
control their own sales-based business with their own customers for their own profit and gain.

---

[1] See U.S. Dept. of Labor, Wage and Hour Division, "Misclassification of Employees as
Independent Contractors," available at https://www.dol.gov/whd/workers/Misclassification/
(describing the repercussions of misclassification) (last accessed June 1, 2018).

CLASS AND COLLECTIVE ACTION COMPLAINT

But Flowers never actually operates its business under these terms, despite Delivery Employees'
heavy investment and reliance on the promises Flowers makes.

4.      In reality, the distributor role is far from "independent."  For example, for the vast
majority of product sales, Flowers itself contracts directly with its own large retailer customers
(like Walmart and Costco) and maintains title over the baking products until the retailers take
possession. But in no case do Delivery Employees ever actually receive title to products that go
into Flowers' retail locations. Instead, Delivery Employees merely deliver the product and stock
Flowers' customers' shelves for a non-negotiable commission that Flowers unilaterally
establishes.

5.      Flowers also dictates the set route or territory that the Delivery Employees sell
within.  Flowers maintains control over that territory or route with respect to things like which
Flowers' products will be available, price, shelf space, displays, and promotions.  Flowers also
unilaterally dictates when unsold bakery products must be reclaimed from retail locations (a.k.a.
"stales" or stale product) as dictated by its retail customers and passed down to Delivery
Employees.  Curiously, even though Flowers purports to pass "title" to the bakery products to the
"independent distributors," Flowers mandates that stale products must be returned to Flowers
warehouse and not used for any other purpose by the Delivery Employees, even where they are
forced to pay market price for them.

6.      Flowers also dictates which products and brands of goods will be sold within each
territory. Notably, if Flowers elects to change which retailers it serves or which brands it will
carry, the Delivery Employee does not receive a corresponding change in the valuation of the
route that he was forced to buy. This is true even where Flowers drastically devalues the Delivery
Employee's route because Flowers unilaterally chose to discontinue a certain brand or stop selling
to a particular retailer within that route.

CLASS AND COLLECTIVE ACTION COMPLAINT

7.     Flowers also hires management and sales employees at each of its local, regional subsidiaries to carry out sales and to directly supervise and instruct the so-called "independent distributors" in performance of their distribution and merchandizing responsibilities within their routes.

8.     Flowers also controls the Delivery Employees' appearance as well as the appearance of their vehicle. For example, Flowers can make Delivery Employees paint their vehicles to Flowers' specifications or remove advertising that the Delivery Employee has chosen for his/her vehicle.

9.     Delivery Employees must also abide by "Good Industry Practices" as defined unilaterally by Flowers. Failure to abide by any of these requirements risks termination by Flowers and often results in "breach notices" by Flowers where it insists on specific performance obligations with the threat of fines or termination.

10.     As such, rather than operating the sales-oriented independent business promised to them, Delivery Employees primarily carry out a vital portion of Flowers' direct-store-delivery ("DSD") business operations—delivering and merchandizing bakery products to Flowers retail customers for a set commission.

11.     The discrepancy between the business model set forth in Flowers' DA and the one actually put in place by Flowers is not accidental. Flowers sees its DSD model, and specifically the use of "independent distributors," as a significant competitive advantage. It wants, and legally it needs, the appearance of separate, independent businesses to avoid having to treat "distributors" as employees. Yet, at the same time Flowers must be able to ensure delivery to its blue-chip retail customers and control the timely and effective distribution of its products pursuant to the terms of its contracts with those retailers. Attempting to walk this invisible line or to simply capture the best of both worlds, Flowers presents the illusion of independence in its DA and related

CLASS AND COLLECTIVE ACTION COMPLAINT

advertisements with no intention of actually operating its business as necessitated by its retail customers and its personal preference.

12.    Plaintiff is a Delivery Employee who entered into the DA with Flowers in 2016. Plaintiff brings this action on behalf of himself and other similarly situated Delivery Employees. This hybrid action is brought as a "collective" action under the Federal Labor Standards Act ("FLSA") as well as a Federal Rules of Civil Procedure, Rule 23 class action based on numerous violations of Colorado law.

## JURISDICTION AND VENUE

13.    This Court has original subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

14.    In addition, the court has supplemental jurisdiction over Plaintiff's state law class action claims pursuant to 28 U.S.C. § 1367.

15.    This Court has personal jurisdiction over Defendants because they do business in Colorado and in this District.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff and Defendants reside in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## THE PARTIES

17.    Plaintiff Angelo Brock is an adult individual who, at all relevant times was a resident of Denver, Colorado. Plaintiff was employed by Defendants as a "Distributor" from approximately 2016 through present.

18.    Plaintiff is a covered employee within the meaning of the FLSA and the Colorado Wage and Hour Laws.

19.    Plaintiff's written Consent to Join form is attached hereto as **Exhibit A**.

CLASS AND COLLECTIVE ACTION COMPLAINT

20.     Defendant Flowers Foods, Inc. ("Flowers Foods"), is a publicly traded Georgia corporation with its principal place of business in Thomasville, Georgia (NYSE:FLO). It is a leading manufacturer and seller of bakery goods in the United States with gross profits of over $1.9 billion in 2017 (and of over $581 Million in the first quarter alone of 2018). It does business in the Colorado, including Denver, by establishing subsidiaries with the intent of carrying out operations in this region. This entity establishes layers of national and regional subsidiaries to carry out its sham "independent distributor" business model that in fact just secures workers to carry out the delivery and merchandizing of Flowers' customers' retail locations. Flowers Foods ultimately takes responsibility for and recognizes all revenue generated from its sale of bakery goods through its local subsidiaries and its Delivery Employees. It also guarantees and assumes responsibility for the performance of its subsidiaries that execute the DA with Delivery Employees (sometimes called "local subsidiaries") throughout Colorado. Specifically, "Flowers Foods, Inc. will absolutely and unconditionally guarantee the performance by [its local subsidiary] of [the subsidiary's] obligations under the Distributor Agreement." As a result, Flowers Foods, along with Flowers Bakeries, LLC, are ultimately, and jointly, responsible for these claims.

21.     Flowers Bakeries, LLC, is a Georgia limited liability corporation with its principle place of business in Thomasville, Georgia. This entity is the Flowers Foods subsidiary that is charged with sales related activities. It negotiates with retailers on things such as price, shelf space, and service requirements that are then carried out by the Delivery Employees at the direction of the local subsidiaries. Results of these high-level deals make their way down through the local subsidiaries to the Delivery Employees.

22.     One step further down the Flowers' chain is the local DSD subsidiaries such as Flowers Baking Co. of Denver, LLC. Its only member is Flowers Bakeries, LLC (who in turn is

CLASS AND COLLECTIVE ACTION COMPLAINT

entirely owned by Flowers Foods). These local subsidiaries are set up to execute the policies and instructions passed down from the higher up Flowers entities (the Defendants). Each local subsidiary has a president, a vice president of sales, and a director of distributor relations, along with several directors of sales/sales managers. These employees execute sales and pricing agreements as well as visit the actual brick-and-mortar locations that Flowers has contracted to service to keep up customer relationships and ensure the Delivery Employees are meeting their needs as specified in the Flowers Foods negotiated contracts (that Delivery Employees ultimately are tasked with carrying out). They also act as the go-between for Delivery Employees and the other Flowers entities

23.    All of these entities, including Defendants, are part of the Flowers enterprise that jointly and collectively manufacture, advertise, sell, and distribute bakery products throughout Colorado and the United States. They operate jointly in carrying out the common fraud and misclassification against their Delivery Employees and the state of Colorado.

## GENERAL FACTUAL ALLEGATIONS

### A.    Overview of Flowers' Business

24.    Flowers Foods, Inc. is a leading national packaged bakery foods company. It bakes, sells, and distributes breads, buns, rolls, snack cakes, and tortillas, among other items throughout the country under well-known brand names like "Wonder Bread," "Sunbeam," "Tasty Cake," "Nature's Own," and "Dave's Killer Bread." It has two business segments—a direct-store-delivery segment ("DSD Segment") and a warehouse delivery segment. The DSD Segment is at issue here. It produces a wide variety of fresh bakery foods that are sold through a DSD route delivery system to Flowers' retail and foodservice customers in Colorado and other locations.

25.    Within the DSD segment, Flowers Foods, Inc. establishes a web of wholly-owned subsidiary companies to enter into agreements with the "Delivery Employees," such as Plaintiff,

CLASS AND COLLECTIVE ACTION COMPLAINT

who are charged with delivering the bakery products from the warehouse to the retail locations and keeping the shelves stocked. According to Flowers Foods, Inc.'s website, it "sells its products through a network of independent distributors [i.e., Delivery Employees] to retail and foodservice customers."    (https://www.flowersfoods.com/investors/flo-overview/at-a-glance    [emphasis added].)   These Delivery Employees are, thus, integral to Flowers' normal business operations—and they are selling for Flowers, not themselves.

**B.    How Flowers Sells Its So-Called "Independent Distributor Opportunity" to Delivery Employees.**

26.    Flowers classifies Delivery Employees as "independent contractors" and advertises routes as independent business opportunities for Delivery Employees where the Delivery Employees supposedly buy product from Flowers and re-sell it for a profit. Specifically, in disclosure documents, Flowers represents that the independent contractor Delivery Employee will "pay [Flowers] for the bakery products [distributor] purchase[s] for resale to [distributor's] outlets." It reiterates that Flowers "will sell [bakery products] to [distributor] at terms and prices established by [Flowers], and [Flowers] will derive income from these sales. Upon delivery, these products will belong to [the distributor]."

27.    Flowers makes the same representations in the form DA presented to every Delivery Employee. Flowers states that, under its system, it seeks to divide its bakery goods market into territories operated by "independent contractor distributors." Flowers claims to grant the right both to sell and distribute authorized Flowers products within the territory. Under this model, as described in the DA, the Delivery Employee will purchase from Flowers, take ownership of the product, and then resell the products to retail outlets within their territories at a profit.

28.    By claiming that the Delivery Employee is "purchasing" the products from Flowers, Flowers feels it can pass certain business risks to the Delivery Employee. So Flowers

CLASS AND COLLECTIVE ACTION COMPLAINT

makes the Delivery Employees, like Plaintiff, assume the risk of loss for non-payment by Flowers' retail customers, loss resulting from missing or otherwise unaccounted for inventory, and loss resulting from excess stale products.

29.     In short, and in no uncertain terms, the disclosure documents and the DA claim that: (1) Flowers sells bakery products to Delivery Employee; (2) Delivery Employee takes title; and (3) Delivery Employee re-sells to retailers at a profit. In the scenario described by Flowers, Flowers makes a profit by selling to the distributor and passing off title at that time. The Delivery Employee then executes its own independent sale to the retailer. Furthermore, Flowers describes itself, in the DA, as merely the agent of the Delivery Employee in reaching agreements for purchases with retail chain accounts that the Delivery Employee then executes. In its description of this tripartite relationship, Flowers states that it will merely carry accounts receivable for these retail accounts and credit the retail sales price to Delivery Employees.

30.     Flowers uses its described business model to both (1) justify the "independent" nature of Delivery Employees in an effort to support its misclassification of them as independent contractors, and to (2) justify passing business losses and risks to the Delivery Employees who supposedly "take title" to the products.

### C.     Flowers' *Actual* Business Model

31.     Flowers' representations in its disclosure documents and in its DA are false as evidenced by its own statements and accounting policies. To summarize, Flowers represents to Delivery Employees that they own the product and control their destinies. It does that to justify its misclassification of the Delivery Employees as "independent contractors," and to thus avoid the wages, employer-side taxes, and other protections and burdens that would normally come with properly categorizing these workers as "employees." It also does this to justify passing certain risks and losses to the Delivery Employees. But on the other hand, and as proven by its

CLASS AND COLLECTIVE ACTION COMPLAINT

actions as well as what Flowers tells accountants and the Securities and Exchange Commission ("SEC"), Flowers is the one that controls the entire enterprise and actually owns the product. Upon information and belief, this allows Flowers to claim higher revenues and present a healthier business to potential customers and its investors. In short, Flowers is having its cake and eating it too.

32.     More specifically, rather than selling to and vesting rights in the distributors to make retail sales, Flowers itself negotiates, carries out, and receives gross proceeds from the vast majority of bakery sales which are in turn merely delivered by its "distributors" who receive a commission based on Flowers' sales. The reality of selling products to national retailers like Wal-Mart and Costco is that deals are negotiated on a national, or at least regional level and then simply carried out by the local subsidiaries that make up Flowers' DSD Segment. Sales to these retailers accounts for over 75% of Flowers' business in the increasingly corporate "big retail" market that exists in the United States and Colorado.

33.     Flowers' own website and SEC filings confirm that the distributors merely have "the right to distribute," and that sales are actually made and controlled by Flowers (i.e., Flowers sells products "through" distributors). It is Flowers who enters contracts for retail purchase and negotiates all relevant retail terms like pricing. Individual distributors do not, for example, have a contract with the local Wal-Mart within their territory and have no control over the price Wal-Mart agrees to pay Flowers for products that distributors put on Wal-Mart's shelves. Price, product selection, and even product placement within these retail locations are all controlled by Flowers well above the Delivery Employees' level of operation.

34.     Under Flowers' actual business model, Delivery Employees do not, in-fact, take title and then resell the products. Instead, Flowers executes sales with retail locations and "distributors receive a percentage of the wholesale price of product sold to retailers and other

customers." In doing so, and as a matter of accounting, Flowers then actually recognizes the sale to the retail customer as revenue "at the time of delivery when title and risk of loss pass to the [retail] customer." See Flowers' SEC Form 10-K for fiscal year ended January 1, 2011 ("2011 SEC Filing") at p. F-7. Flowers does not recognize the revenue when it supposedly "sells" the products to the Delivery Employees because no sale to these individuals actually occurs. Indeed, in its SEC filings, Flowers explicitly admits that it bears risk of loss and owns title to the products until the retailer or end consumer (like Wal-Mart) actually takes possession. This directly contradicts the representations that Flowers makes to its "distributors," including in the DA, where Flowers claims the Delivery Employees "buy" the product from Flowers and own it upon taking possession.

35.     Flowers' most recent quarterly SEC filing removes any doubt that the DA and its related disclosures are a sham. In its filing, Flowers explicitly admits that, for purposes of sales to its retail chain customers (the vast majority of Flowers products sold), Flowers is the principal, and the employee distributor is the "agent." See Flowers' Form 10-Q for the quarterly period ended April 21, 2018 ("2018 SEC Filing"), at p. 9. This directly contradicts what Flowers told the employee distributors, including Plaintiff, in the franchise disclosure and the DA.

36.     In that recent filing, Flowers also admits again that revenue is recognized based on the retail sales price (as opposed to the wholesale price it supposedly "sells" products to the Delivery Employee for) only once product is delivered to the end customer. Additionally, "[t]he company retains inventory risk, establishes . . . pricing, and fulfills the contractual obligations for [retail] sales." See 2018 SEC Filing at p. 9-10. Again, Flowers wants to save money on wages and employment taxes by claiming that employees are "independent distributors," but it needs to maintain control over the enterprise, the products, and the distribution networks to satisfy its other financial and accounting goals.

37.    Additional facts proving Flowers' control over the relationship with its Delivery Employees (and thus the falsity of the "independent contractor" classification) are as follows:

a.    Delivery Employees are forced to incorporate and retain a majority ownership in their corporation. I.e., they cannot choose their own business form.  This forced corporation then enters into the DA with the Flowers Foods, Inc. subsidiary to show the appearance of a business-to-business relationship.

b.    Despite the forced incorporation, the Delivery Employee himself or herself must personally guarantee the contract.  The personal guarantee makes the individual Delivery Employee liable for performance under and compliance with the DA. This gives Flowers its desired individual employee.

c.    Flowers assigns each Delivery Employee a set route and set brands of Flowers' bakery products to sell within that route to Flowers' retail customers. Delivery Employees pay for the rights to the route.  The price is usually $100,000 or more, financed with FloFin at excessive interest rates.  Moreover, Flowers usually finances the purchase of the route at exorbitant interest rates.  Flowers then automatically deducts the principal and interest from the commissions otherwise owed to the Delivery Employees.

d.    Flowers also controls: (i) which retailers will receive which Flowers' products within the territory; (ii) the price its retailers pay for products; and (iii) which products and brands of goods will remain available to the retailers and, in turn, to the Delivery Employees.

e.    Flowers maintains the right to change which retailers it and its Delivery Employees serve and which brands will be sold to those retailers or otherwise available within a Delivery Employee's territory.

f.    When Flowers makes changes to the products offered and/or the retailers it offers them to, it does not re-value the route the Delivery Employee originally bargained for or otherwise

CLASS AND COLLECTIVE ACTION COMPLAINT

re-evaluate the money the individual owes to Flowers for that route. This is true even where Flowers has drastically reduced the value of a given route by unilaterally choosing to discontinue a product or stop selling to a retailer in that territory.

g.    Flowers deploys a management structure within each local subsidiary including branch and/or sales managers who manage relationships with retail customers, carry out sales, and directly supervise and instruct the Delivery Employees in performance of their responsibilities.  Again, the distributors are not "independent."  They have bosses at Flowers.

h.    Flowers also dictates when unsold bakery products must be reclaimed from retail locations (a.k.a. "stales" or stale product).  Flowers demands that such products, despite supposedly being the "property" of the Delivery Employee, be returned to a Flowers warehouse for Flowers' further benefit or re-sale, not the Delivery Employees. For example, if there is stale product within a Delivery Employee's territory above the threshold level unilaterally established by Flowers, Flowers charges the Delivery Employee retail price for the products but maintains possession of these products itself and, on information and belief, sells these products to its thrift customers.

i.    Delivery Employees must also agree to maintain a certain physical appearance for both themselves and their vehicles. Flowers retains and exercises the right to force Delivery Employees to paint their vehicles to Flowers' specifications or remove advertising that the Delivery Employees have chosen for their vehicle.

j.    Delivery Employees must abide by "Good Industry Practices" as defined by Flowers. Failure to abide by any of these requirements risks termination by Flowers.

k.    The DA has no end date and Delivery Employees often work for Flowers for long periods of time. Per Flowers, these are "long-term financing arrangements."

l.    Flowers sets a calendar or schedule of days that Delivery Employees must work

and what tasks are to be completed on those dates (i.e., managing inventory vs. dropping new product). Flowers also requires that work be performed on the route each day of the week as its customers require and expect under their contracts with Flowers. Flowers describes its frequency of deliveries and shelf-stocking as "an increasingly important competitive factor" over its competition and it needs to control Delivery Employees to perform accordingly.

m.    Finally, When Flowers cannot find a Delivery Employee to service a particular route or territory, it uses its own employees to perform the same distribution and merchandizing work. Also, when Flowers is starting up in a new area, it uses a temp agency (that classifies drivers as employees) to conduct this very same work. In short, Flowers and other companies routinely treat individuals performing the same work as Delivery Employees as employees and not independent contractors. The choice to make Delivery Employees "independent contractors" is simple cost avoidance. See, e.g., Flowers' 2018 SEC Filings at p. 47 ("In the current quarter, a larger portion of our sales were made through independent distributors resulting in increased distributor distribution fees as a percent of sales and decreased workforce-related costs as a percent of sales . . . [which, among other things] resulted in a decline in workforce related costs."); and see e.g. Flowers' SEC Form 10-K for fiscal year ended December 28, 2013 ("2014 SEC Filing") at p. 39 ("The increase in workforce-related costs was primarily attributable to the Lepage and Sara Lee California acquisitions as they generally did not use independent distributors to deliver product for the majority of 2013. We transitioned the Sara Lee California and are transitioning the Lepage operations to the independent distributor model which will, over time, decrease the workforce-related costs and increase the distributor distribution fees.")

**D.    Flowers Deducts Wages from Its Distributor Employees.**

38.    Flowers deducts and fails to reimburse several types of expenses incurred by Delivery Employees in the course of their work. For example, Flowers deducts the costs of

vehicles-related expenses (gas, maintenance, insurance, etc.) as well as "handheld" and warehouse fees from weekly Delivery Employee pay. Moreover, Flowers actually charges Delivery Employees, including Plaintiff, for the pleasure of delivering for Flowers. For instance, Flowers charges recurring, non-negotiable fees as part of their operation. This includes, but is not limited to a warehouse fee, an administrative fee, and a technology fee (for use of Flowers required handheld computer equipment).

39.     Flowers also charges Delivery Employees for (excess) stale, lost, stolen, or otherwise unaccounted retail inventory. As such, distributors illegally serve as insurers of the Flowers' merchandise. *See, e.g., Quillian v. Lion Oil Company*, 96 Cal. App. 3d 156, 161 (1979); *Kerr's Catering Service v. Department of Indus. Relations*, 57 Cal. 2d 319, 327 (1962) ("The employees, through this device, are in effect made insurers of the employer's merchandise, and the commissions earned by the employees which are subject to the deduction serve the same purpose as an employee's 'bond' exacted by the employer to cover shortages.").

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

40.     Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiff brings the First Cause of Action on behalf of himself and all similarly situated individuals (the "FLSA Class"):

> "All persons who worked pursuant to a "Distributor Agreement" or similar arrangement with Flowers Food, Inc., or one of its subsidiaries, in Colorado that were classified as "independent contractors" during the period commencing three years prior to the commencement of this action through the close of the Court-determined opt-in period."

Plaintiff reserves the right to modify this definition prior to conditional certification of the FLSA Collective Action.

41.     To the extent tolling operates to toll claims by the FLSA Class against Defendants, the applicable statute of limitations and period for calculating damages should be adjusted accordingly.

CLASS AND COLLECTIVE ACTION COMPLAINT

42.    Defendants are engaged in communication, business, and transmission throughout the United States and are, therefore, engaged in commerce within the meaning of Title 29 of the United States Code Section 203(b).

43.    Plaintiff has consented in writing to be a part of this action pursuant to Title 29 of the United States Code Section 216(b).

44.    Plaintiff and members of the FLSA Class are similarly situated in that they signed a DA or similar contract, have substantially similar job requirements, receive similar or identical pay, and were required to work under the same uniform conditions and systems.

45.    This action meets all prerequisites for the maintenance of a collective action under the FLSA.  Also, the persons who comprise the FLSA Class exceed 100 persons and are therefore so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a collective class will benefit the parties and the Court.

46.     Nearly all factual, legal, statutory, declaratory, and injunctive relief issues raised in this Complaint are common to the FLSA Class and will apply uniformly to every member of the FLSA Class.

47.    The representative Plaintiff will fairly and adequately represent and protect the interest of the FLSA Class, and has retained attorneys who are competent and experienced in similar litigation. There are no material conflicts between the claims of the representative Plaintiff and the members of the FLSA Class that would make collective treatment inappropriate. Counsel for the FLSA Class will vigorously assert the claims of the entire FLSA Class.

48.    Notice of this lawsuit should be sent to the FLSA Class and Plaintiff will move for this after filing this Complaint. These individuals are readily identifiable through Flowers' records.

CLASS AND COLLECTIVE ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

49.    Plaintiffs bring causes of action three through seven as a class action against Flowers pursuant to Rule 23 of the Federal Rules of Civil Procedure and pursuant to Flowers' many violations of California state law. The proposed Rule 23 Class ("Colorado Class") is defined as:

> "All persons who worked in Colorado pursuant to a "Distributor Agreement" or similar arrangement with Flowers Food, Inc., or one of its subsidiaries, that were classified as "independent contractors" during the period commencing four years prior to the commencement of this action through judgment."

50.    To the extent equitable tolling operates to toll claims by the Class against Defendants, the applicable statute of limitations or recovery period should be adjusted accordingly.

51.    Members of the Class are so numerous that their individual joinder is not practicable. On information and belief, there are in excess of 75 members of the Class.

52.    There are numerous questions of law and fact common to the Class which predominate over any individual issues. These include:

a.    The proper interpretation of the DA;

b.    Whether Plaintiff and the members of the Class were misclassified as independent contractors under Colorado law;

c.    Whether Flowers' misclassification of Plaintiff and the Class as independent contractors was willful and/or intentional;

d.    Whether Plaintiff and other Distributors worked overtime without receiving overtime wages;

e.    Whether deducting wages for various expenses from Plaintiff and the members of the Class' pay for ordinary business expenses was illegal;

CLASS AND COLLECTIVE ACTION COMPLAINT

53.     Plaintiff's claims are typical of the other members of the Class because Flowers' uniformly enters DA contracts with its distributors classifying them as "independent contractors" and treats them as such. This means none of these individuals got the benefits of Colorado wage laws to which they were entitled.

54.     Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained attorneys who are competent and experienced in Class Action litigation. There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

55.     Class treatment is superior to individualized treatment.  Furthermore, without class certification and determination of declaratory, injunctive, statutory, and other legal questions within a class format, prosecution of separate actions by individual members of the Class will create the risk of: inconsistent or varying adjudications with respect to individual members and/or establishing incompatible standards of conduct for the parties opposing the Class which would, as a practical matter, be dispositive of interests of other members not party to the adjudication. This would substantially impair or impede their ability to protect their interests.

56.     Additionally, Defendants have acted or refused to act on grounds generally applicable to the Class, making class-wide relief appropriate with respect to the Class as a whole. Flowers classifies each individual entering into a DA as an independent contractor and uniformly treats them as such.  Likewise, the interest rates are uniformly in violation of Colorado law.

## **FIRST CAUSE OF ACTION**

### **(Failure to Pay Overtime under the FLSA)**

57.     Plaintiff incorporates each and every allegation contained above.

58.     Plaintiff brings this cause of action on behalf of himself and the FLSA Class.

59.     The FLSA (Section 207(a)(1)) requires overtime pay at a rate not less than one and one-half times an employee's regular rate for work over forty hours in a week.

60.     Flowers' distributors including Plaintiff regularly worked (and continue to work) between 50 and 70 hours per week in accord with Flowers' mandated schedule.   Yet Flowers never paid any Plaintiff or any member of the FLSA Class any of the overtime pay.

61.     Flowers knows that these distributors are improperly classified and that they work well over 40 hours per week, but intentionally and willfully fails to provide overtime premium pay.

62.     Plaintiffs and the FLSA Class are thus entitled to, and hereby seek, unpaid overtime for hours worked in excess of forty in a week, plus interest, liquidated damages, penalties, costs and attorney's fees as provided by the FLSA.

## SECOND CAUSE OF ACTION

### (Colorado Wage Protection Act – Unlawful Deductions)

63.     Plaintiff incorporates each and every allegation contained above.

64.     Plaintiff brings this cause of action on behalf of himself and the Colorado Class.

65.     Plaintiff and other Delivery Employees are "employees" under Colorado Rev. Stat. § 8-4-101(5) and are entitled to the benefits provided by Colorado law. This includes the right to be free from unlawful deductions under Colo. Rev. Stat. § 8-4-105.

66.     As set forth above, Flowers passes a host of expenses along to its Delivery Employees, including the delivery vehicle(s) and attendant costs of operating a delivery vehicle(s) along with a host of fees like warehouse, handheld, technology, and stale ("shrink") fees for outdated product that failed to sell, among others. These are deducted from the employees' pay each week and/or otherwise not reimbursed by Flowers.

67.     Pursuant Colo. Rev. Stat. Ann. § 8-6-118 and Colo. Code Regs. §1103-1:18, employers, such as Defendants, who fail to pay an employee wages in conformance with the Colorado law shall be liable to the employee for the unpaid wages, reasonable attorney's fees, and costs of the action.

**THIRD CAUSE OF ACTION**

**(Colorado Minimum Wage Order – Overtime and Minimum Wage)**

68.     Plaintiff incorporates each and every allegation contained above.

69.     Plaintiff brings this cause of action on behalf of himself and the Colorado Class.

70.     Colorado law requires overtime pay at one and one half the regular r ate of pay for work in excess of 12 hours in a workday or 40 hours in a workweek.

71.     Plaintiff and the Colorado Class are expected to and in fact do work in excess of 12 hours per day and 40 hours per work. Despite this, Flowers does not provide any overtime compensation.

72.     Pursuant Colo. Rev. Stat. Ann. § 8-6-118 and Colo. Code Regs. §1103-1:18, employers, such as Defendants, who fail to pay an employee wages in conformance with the Colorado law shall be liable to the employee for the unpaid wages, reasonable attorney's fees, and costs of the action.

**PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendant, as follows:

1.  Designation of this action as a collective action on behalf of the members of the FLSA Collective Action Class and prompt issuance of notice pursuant to 29 U.S.C.§ 216(b) to all similarly situated members of the FLSA Collective Action Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

2.  Certification of Plaintiff's Colorado state law claims as a Class Action pursuant to Fed. R. Civ. P. 23 and prompt issuance of notice to class members pursuant to Rule 23(c)(2);

3.  An award of regular and overtime compensation due under the FLSA and the Colorado

law;

4.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay regular and overtime compensation pursuant to the FLSA (e.g. 29 U.S.C. § 216);

5.  An award of pre-judgment and post-judgment interest;

6.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

7.  Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted,
Dated: September 19, 2022                    **MUHAISEN & MUHAISEN, LLC**

                                    By:    <u>*/s/* Wadi Muhaisen</u>
                                           Wadi Muhaisen
                                           1225 17th Street, Suite 2520
                                           Denver, Colorado 80202
                                           Tel: (303) 872-0084
                                           Fax: (303) 558-4128
                                           Email: wadi@muhaisenlaw.com

                                           Attorneys for Plaintiffs